1   JOHN L. BURRIS (SBN# 69888)
    LAW OFFICES OF JOHN L. BURRIS
2   Airport Corporate Centre
    7677 Oakport Street, Suite 1120
3   Oakland, California 94621
    Telephone: (510) 839-5200
4   Facsimile: (510) 839-3882
    Email: john.burris@johnburrislaw.com
5
    JAMES B. CHANIN (SBN# 76043)
6   Law Offices of James B. Chanin
    3050 Shattuck Avenue
7   Berkeley, California 94705
    Telephone: (510) 848-4752
8   Facsimile: (510) 848-5819
    Email: jbcofc@aol.com
9
    Attorneys for Plaintiffs
10

11                UNITED STATES DISTRICT COURT
12
               NORTHERN DISTRICT OF CALIFORNIA
13

| | |
|---|---|
| JANE SMITH NO. 1;<br>JANE SMITH NO. 2;<br>JANE SMITH NO. 3;<br>JANE SMITH NO. 4; and<br>JANE SMITH NO. 5, individually and<br>on behalf of persons similarly<br>situated,<br><br>        Plaintiffs,<br><br>vs.<br><br>CITY OF OAKLAND;<br>RICHARD VALERGA, DOES 1-100,<br>inclusive,<br><br>        Defendants. | CASE NO.<br><br>**COMPLAINT FOR DAMAGES,<br>DECLARATORY AND INJUNCTIVE<br>RELIEF**<br>  (42 U.S.C. Section 1983)<br><br>**CIVIL RIGHTS CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

JURISDICTION

    1.   This action arises under 42 U.S.C. Section 1983.
Jurisdiction is based on 28 U.S.C. Sections 1331 and 1343.

COMPLAINT                1

INTRADISTRICT ASSIGNMENT

2.   The claims alleged herein arose in the City of Oakland, State of California.   Therefore, venue and assignment lies in the United States District Court for the Northern District of California, San Francisco or Oakland Divisions.   28 U.S.C. Section 1391(b)(2).

PARTIES

3.   Plaintiff, JANE SMITH NO. 1, is an Asian female.

4.   Plaintiff, JANE SMITH NO. 2, is an Asian female.

5.   Plaintiff, JANE SMITH NO. 3, is an Asian female.

6.   Plaintiff, JANE SMITH NO. 4, is an Asian female.

7.   Plaintiff, JANE SMITH NO. 5, is an Asian female.

8.   Defendant CITY OF OAKLAND is, and at all times herein mentioned was, a municipal corporation duly organized and existing under the laws of the State of California.

9.   Defendant RICHARD VALERGA (hereinafter Defendant VALERGA) was at all times herein mentioned, a Police Officer for Defendant CITY OF OAKLAND and is sued herein in his individual and official capacities.

10.   Plaintiffs are ignorant of the true names and/or capacities of defendants sued herein as DOES 1 through 100, inclusive, and therefore sues said defendants by such fictitious names.   Plaintiffs will amend this complaint to allege their true names and capacities when ascertained.   Plaintiffs are informed and believe, and upon such information and belief allege that each of the Doe defendants is legally responsible and liable for

COMPLAINT                            2

the incident, injuries and damages hereinafter set forth, and that each of said defendants proximately caused said incidents, injuries and damages by reason of their negligence, breach of duty, negligent supervision, management or control, battery, violation of constitutional rights, violation of public policy, false arrests, or by reason of other personal, vicarious or imputed negligence, fault, or breach of duty, whether severally or jointly, or whether based upon agency, employment, ownership, entrustment, custody, care or control or upon any other act or omission. Plaintiffs will ask leave to amend this complaint to insert further charging allegations when such facts are ascertained.

11.   In doing the acts alleged herein, Defendants, and each of them, acted within the course and scope of their employment for the CITY OF OAKLAND.

12.   In doing the acts and/or omissions alleged herein, Defendants, and each of them, acted under color of authority and/or under color of law.

13.   In doing the acts and/or omissions alleged herein, Defendants, and each of them, acted as the agent, servant, employee and/or in concert with each of said other Defendants herein.

### STATEMENT OF FACTS

14.   Plaintiffs are informed and believe and thereon allege that defendants VALERGA and/or DOE 1-50, while acting in his capacity as an on duty, sworn member of the CITY OF OAKLAND Police Department, engaged in a repeated custom, policy, pattern

COMPLAINT                                    3

or practice of singling out women of Asian descent for traffic stops and subjecting them to sexual harassment and/or other disparate and discriminatory treatment based on their gender, race and/or ethnicity, including, but not limited to, inappropriate and unwanted physical contact.

15.   The plaintiffs and class members are women of Asian descent that were subjected to the violation of their civil rights by defendants VALERGA, the CITY OF OAKLAND and/or DOES 1–100 and/or each of them.

### PLAINTIFF JANE SMITH NO. 1

16.   In or about late January or early February 2005, plaintiff, JANE SMITH NO. 1, was driving in the vicinity of East 14th Street in Oakland, California, when she was pulled over and directed to stop her vehicle by defendant VALERGA or DOE 1 without reasonable or probable cause to believe that the plaintiff had committed any traffic violation or crime.

17.   When the plaintiff asked defendant VALERGA or DOE 1 why he had stopped her, defendant VALERGA or DOE 1 told the plaintiff he wanted to speak with her.

18.   Defendant VALERGA or DOE 1 then ordered plaintiff JANE SMITH NO. 1 to get out of her car and accompany him to his police vehicle.   Defendant VALERGA or DOE 1 directed the plaintiff to sit in the front seat of his car.

19.   Reasonably believing that she was not free to leave and was required to follow defendant VALERGA's or DOE 1's orders, plaintiff sat in the front seat of the police vehicle.

20.   Once plaintiff was seated in the patrol vehicle,

COMPLAINT                    4

defendant VALERGA or DOE 1 asked the plaintiff for her telephone number and ordered the plaintiff to call his cell phone number from her phone so that he could save her telephone number to his cell phone.

21.   Defendant VALERGA or DOE 1 told the plaintiff that he wanted to take her picture and told her words to the effect that she was pretty.  Defendant VALERGA or DOE 1 then proceeded to take the plaintiff's photograph with his cell phone.

22.   Defendant VALERGA or DOE 1 told the plaintiff that she needed to smile and took more photographs of the plaintiff. Defendant VALERGA or DOE 1 also attempted to touch the plaintiff, but she pulled away from him and told him not to touch her.

23.   The plaintiff repeatedly asked defendant VALERGA or DOE 1 if she could go and he told the plaintiff that she could not.

24.   Defendant VALERGA or DOE 1 told the plaintiff that he wanted to take a photograph of the plaintiff with her sweater opened.  Reasonably believing that she could not refuse and that defendant VALERGA or DOE 1 would not allow her to leave the car, plaintiff opened the front of her sweater and defendant VALERGA or DOE 1 took another photograph.

25.   The plaintiff continued to ask defendant VALERGA or DOE if she could go and defendant VALERGA or DOE 1 refused to allow the plaintiff to leave his vehicle.

26.   Instead, defendant VALERGA or DOE 1 asked the plaintiff a series of personal questions having nothing to do with any legitimate law enforcement purpose.  This included

COMPLAINT                                    5

asking the plaintiff where she worked and telling her that he wanted to visit her at work.

27. During this entire time, the plaintiff reasonably believed that she was not free to leave and was extremely frightened and upset about defendant VALERGA's or DOE 1's conduct.

28. While the plaintiff was sitting on the front seat of defendant VALERGA's or DOE 1's police vehicle, another City of Oakland Police Officer (DOES 2-50 and/or each of them) pulled up and observed the plaintiff in the car. Thereafter, defendant VALERGA or DOE 1 allowed the plaintiff to leave the vehicle and did not issue any citation to the plaintiff for any alleged traffic violation or crime.

29. Plaintiff is informed and believes and thereon alleges that defendants DOES 2-50 and/or each of them, although aware that defendant VALERGA or DOE 1 had civilians sitting in the front seat of his vehicle and/or had other knowledge of defendant VALERGA or DOE's misconduct, failed to document, report or otherwise take any or appropriate action to ensure that defendant VALERGA and/or DOES 1-50 did not violate the rights of citizens, such as the plaintiffs.

30. Plaintiff JANE SMITH NO. 1 is informed and believes and thereon alleges that after she related what occurred to her sister, plaintiff's sister reported the incident to defendant CITY OF OAKLAND's Police Department shortly thereafter.

31. Nevertheless, plaintiff is informed and believes and thereon alleges that defendant CITY OF OAKLAND and/or DOES

COMPLAINT                          6

51-100 and/or each of them, failed to take appropriate remedial action and, as a result thereof, defendant VALERGA or DOE 1 was allowed to continue to engage in his pattern and practice of violating the rights of Asian females while he was working as a police officer for the CITY OF OALKAND.

**PLAINTIFF JANE SMITH NO. 2**

32.  Plaintiff, JANE SMITH NO. 2, was also subjected to a traffic stop by defendant VALERGA or DOE 1 on or about February 5, 2005 while defendant VALERGA or DOE 1 was acting in his capacity as a member of the CITY OF OAKLAND Police Department.

33.  At that time, plaintiff JANE SMITH NO. 2 was driving her automobile in the vicinity of 23rd Avenue and 15th Street in Oakland, California.  Plaintiff JANE SMITH NO. 2 had her two minor children sitting in the back seat of her vehicle.

34.  After making a turn onto 15th Street, defendant VALERGA or DOE 1 pulled up behind her, put on his siren and directed plaintiff to pull her car over without reasonable or probable cause to believe that the plaintiff committed any traffic violation or crime.

35.  The plaintiff pulled her vehicle over and stopped. Defendant VALERGA or DOE 1 asked the plaintiff for her driver's license and ordered her to accompany him to his police vehicle, leaving the plaintiff's two minor children alone in the plaintiff's car.

36.  Defendant VALERGA or DOE 1 asked the plaintiff a series of questions unrelated to any legitimate law enforcement purposes, including whether she was married and where she worked.

COMPLAINT                           7

37.   Defendant VALERGA or DOE 1 touched the plaintiff's hands, commented that her hands were soft and asked plaintiff for her phone number.

38.   During this entire time, plaintiff was frightened and reasonably believed that she could not leave the police vehicle.

39.   Eventually, defendant VALERGA or DOE 1 returned the plaintiff's driver's license to her, allowed her to leave the car and did not issue any citation to the plaintiff for any alleged traffic violation or other crime.

**PLAINTIFF JANE SMITH NO. 3**

40.   In or about approximately late February 2005, plaintiff JANE SMITH NO. 3 was driving her vehicle on 14th Avenue in Oakland California near Highland Hospital when she was directed by defendant VALERGA or DOE 1 to pull over.

41.   After directing the plaintiff to give him her driver's license, defendant VALERGA or DOE 1 ordered the plaintiff to sit on the front seat of his CITY OF OAKLAND Police Vehicle. Once in the police car, Defendant VALERGA or DOE 1 asked the plaintiff for her home telephone and cell phone number.

42.   While seated in the police vehicle, defendant VALERGA or DOE 1 grabbed the plaintiff's hand and told her that her hands were soft.  Plaintiff told defendant VALERGA or DOE 1 that she did not want him to touch her, but he persisted.

43.   Defendant VALERGA or DOE 1 also asked plaintiff a series of personal questions unrelated to any legitimate law

COMPLAINT                                      8

enforcement purpose.  This included asking where she worked and telling the plaintiff that he wanted to visit her at work.

44.  Defendant VALERGA or DOE 1 told the plaintiff to kiss him.  When she did not, he kissed the plaintiff on her lips.  Shocked, the plaintiff told defendant VALERGA or DOE 1 not to kiss her.  Defendant VALERGA or DOE 1 asked the plaintiff whether she liked being kissed by him and she told him no.

45.  Despite being told by plaintiff that she did not want him to kiss her, defendant VALERGA or DOE 1 kissed the plaintiff again on the lips.

46.  During this entire time, the plaintiff was frightened and reasonably believed that she could not leave the police vehicle.

47.  Eventually, defendant VALERGA or DOE 1 allowed the plaintiff to leave the car and did not issue the plaintiff a citation for any traffic violation or other crime.

48.  The following day, defendant VALERGA or DOE 1 called the plaintiff on the telephone and said that he wanted to take her out for lunch.  The plaintiff declined.

### PLAINTIFF JANE SMITH NO. 4

49.  In or about late 2004 or the first half of 2005, plaintiff JANE SMITH NO. 4 was driving her car westbound on McArthur Boulevard in the vicinity of 38th Avenue in Oakland, California.  The plaintiff had her two minor children in the vehicle with her.

50.  At approximately 35th Avenue, the plaintiff

COMPLAINT                              9

noticed that there was a CITY OF OAKLAND Police car following her vehicle.

51. After the plaintiff turned onto 35th Avenue, she continued to Kansas Street, where she made another turn onto Kansas Street. The plaintiff noticed that the police vehicle was continuing to follow her.

52. Eventually, the plaintiff parked her car across the street from her home on Kansas Street. Defendant VALERGA or DOE 1, who had been driving the CITY OF OAKLAND Police car which had been following her, parked the police vehicle on Kansas Street.

53. Defendant VALERGA or DOE 1 ordered the plaintiff to get out of her car and to go to his police vehicle without any reasonable or probable cause to believe that the plaintiff had committed any vehicle code violation or other crime.

54. The plaintiff told her children to get out of the car and go to their home.

55. Reasonably believing she was not free to leave, the plaintiff went to defendant VALERA'S or DOE 1'S police vehicle where he directed her to sit on the front passenger seat.

56. Defendant VALERGA or DOE 1 directed the plaintiff to produce her driver's license and asked for her telephone number. Defendant VALERGA or DOE 1 repeatedly attempted to touch the plaintiff's hand, but she pulled away from him and told him not to touch her.

57. Defendant VALERGA or DOE 1 persisted in his

COMPLAINT                                      10

attempts to touch the plaintiff's hands and remarked to the plaintiff that her hands were cold. Defendant VALERGA or DOE 1 asked the plaintiff if he could call her for a date and she told him no.

58. During this entire time, the plaintiff was frightened and reasonably believed that she was not allowed to leave the police car.

59. Eventually, defendant VALERGA or DOE 1 allowed the plaintiff to leave his police vehicle and did not issue the plaintiff a citation for any alleged traffic violation or other crime.

## PLAINTIFF JANE SMITH NO. 5

60. In or about approximately 2004 or 2005, plaintiff JANE SMITH NO. 5 was driving in the vicinity of Fruitvale and International Boulevard in Oakland, California, when she was directed to pull her vehicle over by defendant VALERGA or DOE 1.

61. After taking the plaintiff's driver's license, defendant VALERGA or DOE 1 ordered the plaintiff to sit in the front seat of his police vehicle.

62. Defendant VALERGA or DOE 1 asked the plaintiff a series of personal questions unrelated to any legitimate law enforcement purpose, including where she went to school and whether she had a boyfriend.

63. Defendant VALERGA or DOE 1 took the plaintiff's hand and held it for a long time and asked her for her cell phone number. Defendant VALERGA or DOE 1 entered the

COMPLAINT                              11

plaintiff's cell phone number into his cell phone.

64.   During this entire time, the plaintiff was frightened and reasonably believed that she was not allowed to leave defendant VALERGA's or DOE 1's vehicle.

65.   Eventually, defendant VALERGA or DOE 1 told the plaintiff that she could leave, but retained her driver's license, telling the plaintiff words to the effect that he wished to keep it for the memories.  Defendant VALERGA or DOE 1 did not issue the plaintiff a citation for any alleged traffic violation or other crime.

66.   Subsequently, plaintiffs are informed and believe and thereon allege that defendant VALERGA or DOE 1 was charged by the Alameda County District Attorney's Office with violations of the California Penal Code in connection with his traffic stops of Asian females. Plaintiffs are informed and believe and thereon allege that defendant VALERGA or DOE 1 pleaded no contest to some of those charges.

67.   Plaintiffs are informed and believe and thereon allege that defendant VALERGA or DOE 1 was able to engage in a custom, policy, pattern and/or practice of inappropriate conduct and civil rights violations against Asian female motorists as a result of longstanding customs, policies and/or practices of the CITY OF OAKLAND which encouraged, authorized, condoned and/or acquiesced in sexual harassment and other unlawful conduct by members of the CITY OF OAKLAND Police Department.

68.   Plaintiffs are informed and believe and thereon

COMPLAINT                        12

allege that said abuses of power by CITY OF OAKLAND Police Officers in past years have included, but are not limited to:

a. Rape, sexual harassment (Officer Bernard Riley);

b. Visiting a brothel while on duty (Officers Eric Riccholt and Mark Neely, Jr.);

c. Stalking, sexual harassment and retaliation against a subordinate (Lt. Antonio Romero);

d. Quid pro quo sexual harassment (Officer Kent McNabb);

e. Sexual harassment (Officer John Mendez);

f. Kidnapping, assault and battery, drug planting, fabricating evidence and reports, false arrests and false imprisonment, conspiracy (See, e.g., *Delphine Allen v. City of Oakland, et al.,* Master File No. C00-4599 TEH);

g. Violation of civil rights resulting in a jury award totaling more than $2 million dollars in damages to plaintiffs against OPD officers Clyde Sims, Robert Chenault, Michael Sitterud (*Bari/Cherny v. FBI, et al.*);

h. *Stewart v. City of Oakland, et al.* (Sexual harassment and sexual assault of a civilian by Oakland Police officer);

i. *Keller-Dean v. City of Oakland, Gary Romero, et al.,* USDC Case No. C00-01930 MHP (sexual assault/sexual harassment of a civilian by an Oakland Police Officer).

69. Plaintiff is further informed and believes and thereon alleges that the repeated abuse of authority by CITY OF OAKLAND Police Officers is the product of a culture of

COMPLAINT                          13

tolerance within the CITY OF OAKLAND Police Department. This culture is rooted in the deliberate indifference of high ranking Defendant CITY OF OAKLAND officials, including, but not limited to Defendants DOES 51-100, and/or other high ranking officials and/or supervisors, and each of them, individually and/or acting in concert with one another, who have routinely acquiesced in misconduct of members of the CITY OF OAKLAND Police Department, ratified such misconduct and/or who have otherwise failed to take the measures necessary to prevent and curtail such misconduct.

70.   Plaintiffs are further informed and believe and thereon allege that they suffered the violation of their constitutional rights and otherwise incurred damages as alleged herein as a result of customs, policies, patterns and/or practices of Defendants CITY OF OAKLAND and DOES 51-100, and each of them, which have encouraged, authorized, condoned, ratified and otherwise permitted such misconduct to continue and flourish within the CITY OF OAKLAND Police Department.

71.   Plaintiffs are further informed and believe and thereon allege that said customs, policies, patterns and practices have included the repeated failure by Defendant CITY OF OAKLAND and its high ranking officials to fully implement remedial action intended to prevent such misconduct from continuing to occur within the CITY OF OAKLAND Police Department.

72.   Plaintiffs are informed and believe and thereon allege that they suffered the violation of their constitutional

COMPLAINT                          14

rights as a result of deliberate indifference of Defendants CITY OF OAKLAND, DOES 51-100, and/or other high ranking Police Department officials and/or supervisors, with regard to the need for more or different policies, training, supervision and/or discipline of its police officers, including, but not limited to, Defendant VALERGA and/or DOES 1-50, and/or each of them.

73.  Plaintiffs are informed and believe and thereon allege that the subject incidents were caused as a result of the aforesaid customs, policies, patterns, practices and/or deliberate indifference by Defendants CITY OF OAKLAND, DOES 20-10 and/or each of them.

## CLASS ACTION ALLEGATIONS

74.  Plaintiffs seek class certification pursuant to Fed.R.Civ.P. 23(a) and (b)(2) to allege claims for damages, injunctive and declaratory relief on behalf of themselves and all persons similarly situated.  The proposed class consists of all females of Asian descent who were subjected to traffic stops by defendants Richard Valerga and/or DOES 1-50 while they were working as members of the CITY OF OAKLAND Police Department that were not supported by probable cause; all females of Asian descent who were subjected to discriminatory or disparate treatment during traffic stops by defendants Valerga and/or DOES 1-50 while they were working as members of the CITY OF OAKLAND Police Department because of their ethnicity, race and/or gender; and all females of Asian descent who were subjected to sexual harassment by defendants Richard

COMPLAINT                           15

Valerga and/or DOES 1-50 while they were working as members of the CITY OF OAKLAND Police Department.

75. This case satisfies the prerequisites of a Rule 23(b)(2) class action.

76. The class is so numerous that joinder of all members is impracticable. Plaintiffs do not know the identities or exact number of all class members. Based on newspaper accounts, it appears that defendant Valerga began his employment with the City of Oakland Police Department in approximately 1999 and, based on his tenure with the Oakland Police Department and defendant Valerga's repeated pattern and practice of misconduct, the membership of the class is likely to be numerous.

77. There are questions of law and fact common to all members of the class, because all class members have been adversely affected by the challenged actions of the defendants. Common questions of law and fact include, but are not limited to: whether defendant Richard Valerga and/or DOES 1-50 and/or each of them engaged in a practice of making traffic stops of Asian females without probable cause; whether defendants Richard Valerga and/or Does 1-50 and/or each of them engaged in a practice of using traffic stops as a pretext to sexually harass Asian females; whether defendants Richard Valerga and/or Does 1-50 and/or each of them engaged in a practice of singling out Asian females for discriminatory and disparate treatment because of their race, ethnicity and/or gender while they were working as members of the CITY OF OAKLAND Police Department; whether the CITY OF OAKLAND maintained customs, policies, patterns and

COMPLAINT                    16

practices which caused and/or contributed to the violation of the plaintiffs' rights; and whether the CITY OF OAKLAND, its police department and/or city officials and/or supervisors failed to properly train and supervise members of the CITY OF OAKLAND Police Department which caused and/or contributed to the violation of the plaintiffs' rights.

78.   The claims of the named plaintiffs are typical of the claims of the class.  The claims of the class members arise from the same type of conduct, customs, policies or practices that have resulted in damages to the class representatives and are based on the same legal theories.

79.   The representative plaintiffs will fairly and adequately protect the interests of the class because they are, and were, subject to the policies, customs, patterns and practices complained of herein, and have no interests antagonistic to other members of the class.  In addition, plaintiffs' counsel are experienced in litigating federal civil rights cases and class actions, including federal civil rights actions against the CITY OF OAKLAND and the CITY OF OAKLAND Police Department.

80.   The defendants have acted and/or have failed to act on grounds generally applicable to the class, and an award of damages, injunctive and declaratory relief for the class as a whole is appropriate.

81.   The prosecution of separate actions by individual members of the class would create a risk of inconsistent or incompatible standards of conduct for the defendants, thereby

COMPLAINT                                17

making a class action the superior method of adjudicating the controversy.

**STATEMENT OF DAMAGES AND RELIEF SOUGHT**

82. As a result of the acts and/or omissions of defendants as alleged in this Complaint, plaintiffs, and each of them, suffered damages and/or injuries, including, but not limited to, pain, suffering and emotional distress.

83. Plaintiffs will also be entitled to recover their reasonable attorneys' fees and costs in addition to their general and compensatory damages pursuant to statute.

84. The conduct of defendant VALERGA and/or DOES 1-100 and/or each of them, was intentional, oppressive, malicious, fraudulent and/or done with a conscious and/or reckless disregard for the rights of the plaintiffs. Therefore, plaintiffs will be entitled to recover punitive damages in amounts to be determined according to proof.

85. Defendants' policies, practices, customs, conduct and acts alleged herein have resulted and will continue to result in irreparable injury to plaintiffs, including but not limited to violations of their constitutional and statutory rights. Plaintiffs have no plain, adequate or complete remedy at law to address the wrongs described herein. The plaintiffs and class members intend in the future to exercise their constitutional rights in the vicinity of the City of Oakland and in other public places in the City of Oakland. Defendants' conduct described herein has created fear, anxiety and uncertainty among plaintiffs with respect to their ability to exercise their constitutional

rights in the present and future, and with respect to their physical security and safety. Defendants' conduct described herein has also created fear, anxiety and uncertainty among plaintiffs and class members with respect to their exercise of their right to move freely about the public streets, without being subjected to unreasonable searches and seizures and/or discriminatory and disparate treatment due to their ethnicity, race and/or gender.

86. Plaintiffs therefore seek injunctive relief from this court, to ensure that plaintiffs and persons similarly situated will not suffer violations of their rights from defendants' illegal and unconstitutional policies, customs and practices as described herein.

87. An actual controversy exists between plaintiffs and defendants in that plaintiffs contend that the policies, practices and conduct of defendants alleged herein are unlawful and unconstitutional, whereas plaintiffs are informed and believe that defendants contend that said policies, practices and conduct are lawful and constitutional. Plaintiffs seek a declaration of rights with respect to this controversy.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

(42 U.S.C. SECTION 1983)
(AGAINST DEFENDANTS RICHARD VALERGA, DOES 1-50)

88. Plaintiffs incorporate by reference and re-alleges herein Paragraphs 1 through 87.

89. In doing the acts complained of herein, defendants VALERGA and/or DOES 1-19 and/or each of them, did

COMPLAINT                         19

act under color of state law to deprive plaintiffs, the class members and/or each of them as alleged heretofore of certain constitutionally protected rights, including, but not limited to:

(a)  the right to be free from unreasonable searches or seizures;

(b) the right to equal protection of the law; and/or

(c) the right not to be deprived of liberty without due process of law.

90.  Said rights are substantive guarantees under the Fourth and/or Fourteenth Amendments to the United States Constitution.

91.  As a result of the violation of their constitutional rights by defendants VALERGA and/or DOES 1-50 and/or each of them, plaintiffs, the class members and/or each of them sustained the injuries and/or damages as alleged heretofore in this Complaint.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

SECOND CLAIM FOR RELIEF
(42 U.S.C. SECTION 1983)
(AGAINST DEFENDANTS CITY OF OAKLAND, DOES 51-100)

92.  Plaintiffs incorporate by reference and re-allege herein Paragraphs 1 through 91.

93.  As against Defendants CITY OF OAKLAND and/or DOES 51-100 and/or each of them, individually and/or in their capacities as official policy-maker(s) for the CITY OF OAKLAND, the plaintiffs further allege that the acts and/or

COMPLAINT                    20

omissions alleged in the Complaint herein are indicative and representative of a repeated course of conduct by members of the CITY OF OAKLAND Police Department tantamount to a custom, policy or repeated practice of condoning and tacitly encouraging the abuse of police authority, and disregard for the constitutional rights of citizens, such as plaintiffs.

94.   Plaintiffs are further informed and believe and thereon allege that the acts and/or omissions alleged herein are the proximate result of a custom, policy, pattern or practice of deliberate indifference by Defendants CITY OF OAKLAND, DOES 51-100 and/or each of them, to the repeated violations of the constitutional rights of citizens by CITY OF OAKLAND police officers, which have included, but are not limited to, repeated acts of sexual misconduct while on duty, unreasonable searches and seizures, false arrests, false imprisonments, the repeated denial of equal protection of the law based on race and/or gender and other repeated violations of the constitutional rights of citizens in Oakland.

95.   Plaintiffs are further informed and believe and thereon allege that the damages sustained as alleged herein were the proximate result customs, policies and/or practices which included, but were not limited to, the failure to adequately or appropriately hold officers accountable for their misconduct, the failure to properly and fairly investigate complaints about officers' misconduct, the failure to enact or adopt policies to ensure adequate and/or appropriate oversight of officers to prevent continuing

COMPLAINT                          21

violations of the rights of citizens, the failure to properly train and/or discipline officers, the failure to adequately or properly supervise officers, the failure to adopt and fully implement an appropriate early warning system, policies and customs which encouraged officers to target certain groups of citizens for unreasonable search and seizure and/or other customs, and/or policies which caused and/or contributed to, the violation of the rights of citizens by members of the CITY OF OAKLAND Police Department.

96.   The aforementioned deliberate indifference, customs, policies or practices of Defendants CITY OF OAKLAND, DOES 51-100, and/or each of them, resulted in the deprivation of the constitutional rights of the plaintiffs and class members, including, but not limited to, the following:

(a) the right not to be deprived of liberty or property without Due Process of Law;

(b)  the right to be free from unreasonable searches and/or seizures; and/or,

(c) the right to equal protection of the law.

97.   Said rights are substantive guarantees under the Fourth and/or Fourteenth Amendments to the United States Constitution.

98.   As a result of the violation of their constitutional rights by defendants CITY OF OAKLAND and/or DOES 51-100 and/or each of them, plaintiffs and the class members and/or each of them, sustained the injuries and/or damages as alleged heretofore in this Complaint.

COMPLAINT                    22

WHEREFORE, plaintiffs pray for relief as hereinafter set forth.

JURY TRIAL DEMAND

99.  Plaintiffs hereby demand a jury trial.

PRAYER

WHEREFORE, Plaintiffs pray for judgment against defendants, and each of them, as follows:

1.  For an order certifying the class defined herein pursuant to Federal Rules of Civil Procedure Rule 23(b)(2);

2.  For preliminary and permanent injunctive relief restraining defendants from engaging in the unlawful and unconstitutional actions complained of above;

3.  For a declaratory judgment that defendants' conduct complained of herein was a violation of plaintiffs' rights under the Constitution and laws of the United States and California;

4.  For the individual named plaintiffs, general and compensatory damages to be determined according to proof;

5.  For punitive and exemplary damages in amounts to be determined according to proof as to the individual defendants;

6.  For attorneys' fees pursuant to 42 U.S.C. § 1988 and/or other authorities in amounts to be determined according to proof;

7.  For costs of suit;

8.  For pre- and post-judgment interest as permitted by law;

9.  For such other and further relief as the Court may deem just and proper.

COMPLAINT                    23

<u>CERTIFICATION OF INTERESTED ENTITIES OR PERSONS</u>

Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the named parties, there is no such interest to report.


Dated: November 20, 2006          _____/s/_____
                                  JOHN L. BURRIS
                                  Attorney for Plaintiffs

DATED: November 20, 2006          _____/s/_____
                                  JAMES B. CHANIN
                                  Attorney for Plaintiffs

COMPLAINT                          24